# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Curtis Antonio Moore, | Civ. No. 09-2667 (RHK/JJK) |
| Petitioner, | |
| v. | **REPORT AND** |
| | **RECOMMENDATION** |
| Jessica Symmes, Warden, | |
| Respondent. | |

Katherine Menendez, Assistant Federal Defender, counsel for Petitioner.

Mark Nathan Lystig, Esq., Assistant Ramsey County Attorney; and Matthew Frank, Esq., Minnesota Attorney General's Office, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on Petitioner Curtins Antonio Moore's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1). The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that Petitioner's Habeas Corpus Petition be denied and this action be dismissed with prejudice.

## BACKGROUND

A state court jury in Ramsey County District Court found Petitioner guilty of first- and third-degree criminal sexual conduct. The court sentenced him to a

prison term of 156 months after a sentencing hearing on November 15, 2007.

Petitioner appealed the conviction with the assistance of the Office of the State

Public Defender.  On appeal, the Minnesota Court of Appeals summarized the

case as follows:

> Appellant Curtis Antonio Moore and 27-year-old E.D. lived near each other in St. Paul and were acquainted.  They encountered each other on University Avenue on a night in May 2007 and ended up drinking and using crack cocaine (crack) in Moore's condemned apartment where he was illegally staying.  Several times during the evening, E.D. walked from Moore's apartment to her nearby home to use the bathroom because the plumbing was disconnected at Moore's apartment.  E.D. lived with her mother and her mother's boyfriend.

> At about 3:30 a.m., E.D.'s mother woke up when E.D. banged on the window and screamed for her mother to open the door.  As her mother opened the door, E.D. rushed inside.  E.D. had blood on her shirt and was not wearing pants or underwear.  She said, "I've been raped," and stated that the person was right behind her.  Mother's boyfriend immediately called 911.

> Police responded promptly and arrested Moore, who was standing in front of E.D.'s residence with his pants unbuttoned and unzipped and his belt unbuckled.  E.D. came out of the house and said, "He raped me."

> St. Paul Police Sergeant Paul Schnell interviewed Moore twice at the police station.  Moore was crying when Schnell met him and cried periodically throughout the first interrogation.  Moore initially denied having any physical contact with E.D. although he admitted that he and E.D. had been drinking and smoking crack.  Eventually in response to Schnell's statements about the evidence and research showing that crack makes people "hypersexual" and interferes with judgment and self-control, Moore admitted that "things had gotten out of control."

*State v. Moore*, No. A08-0022, 2009 WL 304802, at *1 (Minn. Ct. App. Feb. 10,

2009).  Petitioner's conviction was affirmed by the Minnesota Court of Appeals on February 10, 2009, and the Minnesota Supreme Court denied Petitioner's request for further review on April 21, 2009.  Judgment was entered on May 12, 2009.

Petitioner raises three issues in his timely filed Petition for a Writ of Habeas Corpus with this Court:  (1) a claim of jury impropriety and misconduct; (2) a challenge to the involuntariness of an incriminating statement he gave to law enforcement; and (3) a claim that the state court erroneously admitted highly improper and prejudicial hearsay statements at trial regarding a police officer's opinion about the correlation between crack cocaine use and out-of-control sexual behavior.[1]  This Court recommends that the claims be denied and the Petition be dismissed.

## DISCUSSION

### I.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), prescribes the standards that govern this Court's substantive review of Petitioner's habeas

---

[1]    After Respondent's Answer was filed, this Court concluded that the interests of justice would be served by the appointment of counsel for the Petitioner and appointed the Federal Defendant to represent Petitioner in this matter, pursuant to 18 U.S.C. § 3006A(a)(2)(B).  And, in fact, the interests of justice have been well served by the Federal Defender's representation of Petitioner in this matter, as shown by the comprehensive and well-reasoned argument submitted on Petitioner's behalf.

corpus claims.  The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides

that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme

Court discussed the meaning of this statute, and how it should be applied by the

federal district courts.  The Supreme Court recognized that –

> a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways.  First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Id*. at 405.

> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 413.

The Court also explained that –

A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively unreasonable* . . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record. When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000); *see also* 28 U.S.C. § 2254(e)(1).

Needless to say, a federal district court is not allowed to conduct its own *de novo* review of a state prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts

committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*.

## II.    Analysis

### A. Jury-Impropriety-and-Misconduct Claim

#### (i)    The trial court

After deliberating for hours, and being sequestered overnight, Petitioner's jury returned a guilty verdict on the charge of first-degree criminal sexual conduct.  (Doc. No. 14, 7/24/07 Jury Trial Verdict Transcript ("Verdict Tr.") 839-40).  When the jury was polled about its verdict, one juror, Juror Strasser, first responded non-verbally by nodding her head up and down as to whether the verdict was her "true and correct" verdict.  (Verdict. Tr. 840.)  When the court told her that she needed to answer out loud, she responded, "Yes."  (Verdict Tr. 840.)  Then, within hours after the verdict, Juror Strasser called the trial judge's chambers and announced that she was "not okay with the verdict."  (Verdict Tr. 843.)

Following the phone call, the trial court summoned the attorneys and Petitioner to the courtroom for a summary hearing and advised the parties of Juror Strasser's phone call.  (Verdict Tr. 843-44.)  At this hearing, Petitioner's attorney reported that he had also spoken with Juror McGrew, along with Juror Strasser, outside the courthouse immediately after the verdict, and reference was made in that conversation to some personal attacks by one of the jurors against

6

two holdout jurors during deliberations.  (Verdict Tr. 844-45.)  The trial judge

continued the matter to the following day to determine how to proceed given the

"unusual situation."  (Verdict Tr. 846).  In the interim, the court prohibited either

party from contacting Juror Strasser or any other jury member.  (Verdict Tr. 850.)

The following day, Petitioner's attorney filed a written request for a hearing

to determine whether improprieties had occurred within the jury that implicated

Petitioner's right to a jury trial.  In Minnesota, such a hearing is known as a

*Schwartz* hearing, named after the case *Schwartz v. Minneapolis Bus Co.*, 258

Minn. 325 (1960).  A *Schwartz* hearing is a procedure to be used when there is

an allegation of juror misconduct.  *State v.* Kelley, 517 N.W.2d 905, 908 n.2

(Minn. 1994) (citing *Schwartz*, 258 Minn. at 328).  At such a hearing, jurors are

examined in the presence of counsel, on the record, and under oath, to

determine whether misconduct occurred and, if so, whether it was prejudicial.  *Id.*

Here, Petitioner's attorney's request for a *Schwartz* hearing was based on Juror

McGrew and Juror Strasser's allegations of "personal attacks" during

deliberations, as well as Juror Strasser's phone call to the trial court.

When court reconvened, Petitioner's attorney argued that the trial court

should conduct a *Schwartz* hearing and summon the jurors to determine whether

juror misconduct had occurred during deliberations.  (Doc. No. 14, 7/25/07

Summary Hearing Transcript ("SH Tr.") 5-6, 16-19.)  The prosecutor opposed the

motion.  (SH Tr. 7-15, 20.)  After considering the attorney's arguments, the trial

court denied the request for a *Schwartz* hearing, concluding that Petitioner had failed to establish a prima facie case of juror misconduct. (SH Tr. 22-25.) But the court lifted its prior order disallowing the attorneys to contact the jury members, thereby permitting the parties further exploration of the issue. In doing so, the court stated that "if there is sufficient evidence, you'll have to come back and perhaps there will be prima facie evidence for a *Schwartz* hearing." (SH Tr. 25.) Petitioner's attorney then asked for clarification of the trial court's order, as to whether he could contact Juror McGrew, in addition to Juror Strasser. (SH Tr. 26.) The trial court stated, "[Juror Strasser's] the one who called. I think I'm going to limit it to her at this point." (SH Tr. 26.) Petitioner's attorney responded, "So our hands are tied with respect to the remaining jurors?" (SH Tr. 26.) The trial court stated, "Yes, for now." (SH Tr. 26.)

A police officer contacted Juror Strasser on behalf of the prosecutor that same day. (Doc. No. 5, Attach. 1, Appellant's Brief Appendix ("App. Br. Appx") at App. 4.) According to the officer, Juror Strasser said that she was not threatened with violence or coerced during the jury's deliberations, although she felt "pressured by [the jurors] to reach a guilty verdict." (App. Br. Appx. at App. 4.) Several days after the officer's contact with Juror Strasser, the prosecutor forwarded the officer's report to the trial court. (App. Br. Appx. at App. 3.)

Months later, defense counsel sent the trial court a letter and its own investigator's report detailing a conversation with Juror Strasser. (App. Br. Appx.

at App. 5 & 6.)  In this report, the defense investigator reported that Juror Strasser told her that she did not believe there was enough evidence to convict Petitioner and she felt pressured to change her vote to "guilty."  (App. Br. Appx. at App. 6.)  The investigator also reported that Juror Strasser said that during deliberations, the jury considered the victimization of a juror's friend, who had been raped, and compared those circumstances to the facts of Petitioner's case. Juror Strasser also noted that one of the sequestered jurors had left the hotel to move his car.  (App. Br. Appx. at App. 6.)  When Petitioner's attorney sent this investigator's report to the trial judge, he did not include any further request for a *Schwartz* hearing and did not follow up with any motion for such a hearing.  The trial court took no further action on the matter.

### (ii)    The appeal

In his appeal to the Minnesota Court of Appeals, Petitioner argued that the district court erred by failing to conduct the *Schwartz* hearing.  Specifically, he argued that the case should be remanded to the district court for a *Schwartz* hearing "because the trial court erred in denying [Petitioner's] request for a *Schwartz* hearing and directing the attorneys to personally contact a juror who claimed that she 'was not okay' with the verdict, while prohibiting the attorneys from contacting other jurors, including another juror who had alleged possible jury misconduct."  (Doc. No. 5, Attach. 1, Appellant's Brief to the Minnesota Court of Appeals ("App. Br.") 22.)  He claimed, *inter alia*, that the right to a fair trial by

9

an impartial jury guaranteed by the Sixth Amendment of the U.S. Constitution was violated.

The Minnesota Court of Appeals concluded that the district court did not err by failing to conduct a *Schwartz* hearing. Applying Minnesota law, it noted that there is an exception to the general prohibition on an inquiry into the validity of a verdict; this exception allows jurors to testify "as to any threats of violence or violent acts brought to bear on jurors, from whatever source, to reach a verdict." *Moore*, 2009 WL 304802, at *3 (quoting Minn. R. Evid. 606(b)). However, the court explained that the granting or denying of a *Schwartz* hearing to determine the existence and effect of any such jury misconduct is a matter of discretion for the trial court and, under Minnesota law, the denial of a *Schwartz* hearing is reviewed only for an abuse of discretion. *Id.* at *3. In addition, "[a] defendant must establish a *prima facie* case of jury misconduct before a *Schwartz* hearing is mandated" and, "[t]o establish the *prima facie* case, a defendant must submit sufficient evidence which, standing alone and unchallenged, would warrant the conclusion of jury misconduct." *Id.* Although the court noted that in this case the trial court had permitted counsel to contact a juror and that a "better procedure" would have been for the court to have interviewed the juror in the presence of counsel, it determined that it could not conclude "that the district court violated established law by permitting counsel to contact the juror and to renew the request for a *Schwartz* hearing based on additional information if warranted." *Id.*

The court concluded that because in this case there was no evidence of any express act or threat of violence, the district court did not abuse its discretion in denying a *Schwartz* hearing. *Id.*

The court also addressed Petitioner's claim that the district court had failed to adequately explore whether jury misconduct had occurred by not allowing counsel to contact jurors other than Juror Strasser and by not holding a *Schwartz* hearing after the public defender's investigator obtained additional information from Juror Strasser, such as the fact that a sequestered juror left the hotel to move a car. *Id.* The court pointed out that Petitioner never sought the district court's permission to contact other jurors and did not renew his request for a *Schwartz* hearing after the defense investigator's report was concluded regarding his interview with Juror Strasser. *Id.* As a result, the court, applying state law, concluded that Petitioner waived his right to appeal these issues because they were not raised in the district court. *Id.*

Thereafter, in his Petition for Review to the Minnesota Supreme Court, Petitioner argued that the trial court erred by directing the attorneys to contact Juror Strasser, but not other jurors, instead of holding a *Schwartz* hearing. On April 21, 2009, the Minnesota Supreme Court denied the Petition for Review, and judgment was then entered on May 12, 2009.

### (iii) Writ of habeas corpus

Here, Petitioner argues that the trial court did not employ adequate and

11

proper procedures to investigate whether there was jury misconduct in this case. He contends that his right to a trial by a fair and impartial jury guaranteed by the Sixth Amendment of the U.S. Constitution was violated when the trial court did not hold an evidentiary hearing at which jurors were summoned and examined in the presence of counsel about alleged juror misconduct. In this habeas action, Petitioner specifically "moves the Court to permit his counsel to interview members of his jury, functionally lifting the prohibition on doing so imposed by the state trial court . . ." and "urges that he has established a prima facie case of a Sixth Amendment violation such that an evidentiary hearing with live testimony is appropriate." (Doc. No. 23, Reply to the Govt's Answer to Pet. for Habeas Corpus Relief by State Prisoner ("Pet'r's Reply") 19-20.)

In response, Respondent first argues that Petitioner did not fairly present this federal constitutional claim to the state court and thus the claim is unexhausted. This argument is based on the principle that, in order to strike the appropriate balance between federal and state authority, the state courts should be given a first and fair opportunity to review federal constitutional claims before a federal court exercises habeas review power to determine whether a prisoner is being detained in violation of the U.S. Constitution. In so doing, to ensure that the state court has a fair presentation of the constitutional claim, the habeas petitioner must refer the state court "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case

raising a pertinent federal constitutional issue." *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005).

In this case, there is support for Petitioner's argument that he did present the federal constitutional issue for state court review. For example, in his direct appeal to the Minnesota Court of Appeals, Petitioner grounded his argument in the Sixth Amendment right to a fair jury trial, citing the U.S. Constitution, and *Estrelle v. Williams*, 425 U.S. 501, 503 (1976). And the opening segment of Petitioner's appellate brief addressing the jury issue began, "[t]he right to a fair trial by an impartial jury is a basic guaranty of the United States Constitution," and Petitioner cited federal constitutional authority for that proposition. (App. Br. 26.) However, a claim for habeas corpus relief will not be considered in federal court unless the Petitioner has exhausted his state court remedies by fairly presenting the federal constitutional claims to the highest available state court, which in this case is the Minnesota Supreme Court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Here, it is not clear that Petitioner adequately presented the federal constitutional claim to the Minnesota Supreme Court in the Petition for Review. Although Petitioner did cite several cases that explored the federal constitutional issues, he did not reiterate any of the federal citations in the Petition for Review. But, as the Eighth Circuit noted in *Barrett v. Aceveto*, 169 F.3d 1155, 1162 (8th Cir. 1999), we do not need to belabor this issue of exhaustion because "judicial economy sometimes dictates reaching the

merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." Thus, we turn to the merits of the claim.

As noted above, the AEDPA provides that a habeas petition shall not be granted for a claim that was adjudicated on the merits in a state court proceeding unless the adjudication of the claim resulted in a decision that was: (1) contrary to, or involved an unreasonable application of, clearly established federal law; or (2) based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Clearly established federal law is the law "as determined by the Supreme Court of the United States." *Id.* There is no Supreme Court case that clearly establishes—or indeed establishes at all—that the Sixth Amendment right to a jury trial is violated by Minnesota's prohibition on inquiry into the validity of a jury verdict except to allow jurors to testify as to any threats of violence or violent acts brought to bear on jurors to reach a verdict.

In *Tanner v. United States*, 483 U.S. 107 (1987), the Supreme Court dealt with the issue of whether, and in what circumstances, the Sixth Amendment jury-trial right requires a hearing about alleged jury misconduct. In *Tanner*, a juror submitted an affidavit, and gave a signed statement to an investigator, that there had been rampant drug and alcohol abuse by the jury members, thus compromising the guilty verdict. The Court drew upon the long common-law tradition against using jury testimony to impeach a verdict in concluding that no

14

post-trial *Schwartz*-like hearing was required.  It drew a distinction between those situations where the allegations of misconduct involve extraneous influence being brought to bear on the jury and those involving, as was the case here, charges of misconduct during and within the jurors' deliberations.  As demonstrated by Fed. R. Evid. 606(b), there is no Sixth Amendment requirement that jurors be subjected to post-trial examination about their deliberations when one of their members complains about deliberation misconduct involving, for example, pressure exerted on holdout jurors or jurors taking into account improper or irrelevant matters in their discussions.  *Tanner*, 483 U.S. at 127. Indeed, Fed. R. Evid. 606(b) prohibits any juror testimony –

> as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Fed. R. Evid. 606(b).

This distinction between extraneous influence and internal-deliberation conduct was correctly drawn by the Minnesota court in this case when it said that there was no evidence of any express act or threat of violence involving this jury, and thus the district court did not abuse its discretion in denying a *Schwartz* hearing.  The trial court is not required, in order to comply with the Sixth Amendment, to hold an evidentiary hearing at which jurors are examined about a complaining juror's statements to the effect that the juror was troubled by the

verdict, that undue pressure was brought to bear on holdouts, or that the jurors discussed the comments of one juror in the deliberations about the victimization of a juror's friend who had been raped. These are internal deliberation-focused matters that do not involve the type of extraneous influence referred to in Fed. R. Evid. 606(b) and *Tanner*. *See also Anderson v. Miller*, 346 F.3d 315 (2d Cir. 2003) (stating that a federal court's review into jury deliberations is decidedly limited). Thus, there was no *unreasonable* application of Supreme Court Sixth Amendment jurisprudence in this case.

Petitioner also argues that the state court decision was "based upon an unreasonable determination of the facts in light of the evidence." (Pet'r's Reply 15.) Specifically, Petitioner asserts that the Minnesota Court of Appeals did not acknowledge Juror Strasser's allegation that one of the jurors compared the facts of Petitioner's case to the experience of a friend who had been raped, nor did the court acknowledge the allegation that a juror left the hotel during deliberations to move his car. However, the Minnesota Court of Appeals did make reference to the fact that the Ramsey County Public Defender's investigator had obtained additional information from Juror Strasser about a sequestered juror having left the hotel to move the car. What was determinative to the court was Petitioner's failure to make a motion to the trial court for a *Schwartz* hearing after the completion of the investigation report, which included both of Juror Strasser's allegations. The court ultimately concluded that counsel

sending a letter to the trial court with a copy of the report did not constitute a renewal of the request for a *Schwartz* hearing.  Although Petitioner now argues that the sending of the letter "functionally" renewed the motion for a *Schwartz* hearing, this Court cannot conclude that the Minnesota Court of Appeals erred in its reading of the letter submitted, and therefore, this Court cannot conclude that the court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, Petitioner's jury-impropriety-and-misconduct claim should be denied.

### B. Coerced-Confession Claim

In his *pro se* Habeas Petition, Petitioner claims that his conviction was "obtained by use of force and coercion (sic) statements" in violation of the "right to a fair trial and due process of law" guaranteed to him by the U.S. Constitution. (Doc. No. 1, Attach. 2 at 1, 2.)  Specifically, he contends that a St. Paul police investigator procured two interview statements from him shortly after 5:00 a.m., after he was taken into custody, when he was "still under the influence" of drugs and had not been to sleep.  (*Id.*)  Thus, Petitioner contends, the statements were obtained by force and coercion and their admission into evidence at trial caused prejudice.

But the trial record in this case establishes that, in fact, there were no interview statements taken from the Petitioner in the early morning hours of May 5, 2007, that were admitted into evidence.  There were two taped interviews

of Petitioner conducted that were admitted into evidence, but one was conducted late in the morning, at 11:40 a.m. on May 5, 2007, and the other was not conducted until 5:50 p.m. on May 6, 2007.  (*See* Doc. No. 16, Supplement to Resp't's Answer at A-5 – A-7;  A-8 – A-9.)  And no motion was ever made at trial to suppress these statements on the ground that they were coerced in violation of Petitioner's constitutional rights.

In his *pro se* reply brief to the Minnesota Court of Appeals, Petitioner stated the following:  "My claim is that I still was under the influence.  I had not been to sleep.  The police violated my rights under force and coersion (sic) and uptained (sic) statements before a standard of time to let effects were (sic) off." (Doc. No. 5, Attach. 1, Appellant's *Pro Se* Reply Brief at 2.)  The Minnesota Court of Appeals did not address this claim, which may have been due to the fact that Minnesota appellate courts will not consider *pro se* claims that are "unsupported by either arguments or citations to legal authority."  *State v. Anderson*, 763 N.W.2d 9, 17 (Minn. 2009).  Nevertheless, the state appellate courts will not review for the first time on appeal a suppression claim not raised below.  *See State v. Lieberg*, 553 N.W.2d 51, 56 (Minn. Ct. App. 1996) (stating that failure to raise constitutional challenges to evidence at omnibus hearing generally operates as a waiver of those challenges); *see also State v. Brunes*, 373 N.W.2d 381, 386 (Minn. Ct. App. 1985) (concluding that the appellant's issues were waived because he had not raised them at the omnibus hearing).  And this claim

should not now be reviewed in federal habeas because it is a defaulted claim that was never fairly presented to the state court for review. *O'Sullivan*, 526 U.S. at 845; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Therefore, Petitioner's Petition should be denied as to this claim.

### C. Inadmissible-Evidence Claim

In the taped interview statement conducted by a St. Paul police investigator shortly after Petitioner was arrested, Petitioner initially denied having any physical contact with the victim, although he admitted that he and the victim had been drinking and smoking crack cocaine. Then, in response to the police investigator's statements about research showing that crack makes people "hypersexual" and interferes with judgment and self-control, Petitioner admitted that "things had gotten out of control." *Moore*, 2009 WL 304802, at *1. Petitioner argued that the investigator's statement resembled expert testimony and did not provide any special context for Petitioner's statements and was prejudicial. But the trial court denied Petitioner's attempts to have the police investigator's reference to "research" demonstrating that crack makes users "hypersexual" redacted from the statement, and allowed the statements into evidence. On appeal, the Minnesota Court of Appeals concluded that Petitioner failed to demonstrate that the trial court abused its discretion by admitting the unredacted statement into evidence or that admission of the brief reference to research about the effects of crack use was prejudicial. Petitioner now claims that the

failure to redact the statement was a violation of his right to a fair trial and due process of law as guaranteed by the U.S. Constitution.

Respondent argues that Petitioner did not present this issue as a federal constitutional matter for review by the state courts. Thus, Respondent contends that Petitioner's claim for habeas relief on this issue should not be considered here because Petitioner has not exhausted his state court remedies by fairly presenting a federal constitutional claim to the highest available state court. *O'Sullivan*, 526 U.S. at 845. This Court agrees. Even a generous reading of the briefs submitted by Petitioner to the Minnesota Court of Appeals and the Minnesota Supreme Court does not suggest that Petitioner fairly presented the state courts with the argument that the right to due process guaranteed by the U.S. Constitution was violated when the trial judge refused to redact the investigator's comments about the effects of crack cocaine. This conclusion is supported by the fact that the Minnesota Court of Appeals affirmed the admission of these challenged portions of the interrogation solely by application of Minnesota state law and made no citation to any federal law or constitutional provision. Therefore, the Minnesota court's decision on the admissibility of evidence under Minnesota state law will not be reviewed in federal habeas because he did not raise an issue of federal law.

In addition, Plaintiff has not offered anything to show cause for or prejudice from his failure to present a federal constitutional claim to the Minnesota

Supreme Court, and this Court concludes that it is not necessary to now consider this claim to prevent a miscarriage of justice because Petitioner has not presented this Court with any authority that, under clearly established federal law, the due process clause of the Fourteenth Amendment requires that a trial judge exercise his discretion in these circumstances to redact an investigator's statements about the effect of cocaine. Therefore, this Court does not recommend that Petitioner be given an opportunity to go back to state court to now attempt to present his unexhausted federal claim to the state court for review. Minnesota law will not allow Petitioner to raise, after direct appeal is finished, in a subsequent petition in state court for post-conviction relief, any claim that was known or available at the time of the first review. Thus, any such attempt to go back to state court for review of the federal constitutional claim would be futile. Minn. Stat. § 590.01, Subd. 1(2); *State v. Knaffla*, 309 Minn. 246, 252 (1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.").

Accordingly, Petitioner's inadmissible-evidence claim should be denied, and his Petitioner should be dismissed.

## RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.     Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas

Corpus by a Person in State Custody (Doc. No. 1), be **DENIED**; and

2.     This action be **DISMISSED WITH PREJUDICE**.


Date:  November 15, 2010

                              _s/ Jeffrey J. Keyes_____
                              JEFFREY J. KEYES
                              United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**November 29, 2010**, a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within **fourteen days** after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.